## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **DONALD EVERETT S.,**[1] | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 23-1101-JWL** |
| **MARTIN O'MALLEY,**[2] | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

### MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Social Security Disability Insurance (SSDI) benefits pursuant to sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

## I.      Background

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

[2] On December 20, 2023, Mr. O'Malley was sworn in as Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. O'Malley is substituted for Acting Commissioner Kilolo Kijakazi as the defendant. Pursuant to the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff protectively filed an application for SSDI benefits on March 17, 2021. (R. 17, 237-41). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ failed properly to evaluate both the medical opinion evidence and Plaintiff's subjective allegations of disabling symptoms in the final decision issued December 15, 2022.

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting

Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala,

36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record,

nor try the issues de novo, nor substitute [the Court's] judgment for the

[Commissioner's], even if the evidence preponderates against the [Commissioner's]

decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988) (brackets in

Bowling)).  Nonetheless, the determination whether substantial evidence supports the

Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.

Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

    The Commissioner uses the familiar five-step sequential process to evaluate a

claim for disability.  20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th

Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a

determination can be made at any of the steps that a claimant is or is not disabled,

evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting

Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether

claimant has engaged in substantial gainful activity since the alleged onset, whether he

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals

the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt.

P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner

assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This

assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform his past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, he is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).  The court addresses the errors alleged in Plaintiff's Social Security Brief, beginning with Plaintiff's claim the ALJ failed properly to evaluate Plaintiff's allegations of symptoms.

## II.     Consideration of Plaintiff's Allegations of Symptoms

Plaintiff argues, "the ALJ erred by concluding that Plaintiff's ability to perform in sporadic activities usually while accompanied by friends or family indicates an ability to engage in full-time work activities."  (Pl. Br. 21).  Plaintiff argues that beyond his consideration of Plaintiff's sporadic activities, the ALJ discounted Plaintiff's allegations of symptoms "based on boilerplate language that the claimant's allegations are allegedly 'not entirely consistent' with the evidence."  Id. (quoting R. 23).  He concludes by arguing that Plaintiff's "work history is not consistent with an individual who is exaggerating or has no desire to work."  (Pl. Br. 22).

4

The Commissioner argues the ALJ properly found Plaintiff's allegations of limiting symptoms inconsistent with the medical evidence. (Comm'r Br. 14). He argues, "the ALJ reasonably found Plaintiff's claims of debilitating symptoms were belied by his proven abilities in his extensive activities that included going on cruises, flying on airplanes, going to casinos, taking trips to Europe, among others." Id. 15. He tacitly admits the activities relied upon by the ALJ do not demonstrate an ability to work fulltime, but argues they contradict Plaintiff's claims of debilitating symptoms and are a reasonable and appropriate consideration to discount Plaintiff's allegations. Id. Finally, he argues the ALJ was not required to discuss Plaintiff's extensive work history because the Tenth Circuit does not require a factor-by-factor evaluation of each factor relevant to the evaluation of a claimant's allegations of symptoms but requires the ALJ to set out the evidence he relies upon and the court must determine whether the evidence relied upon is such relevant evidence as a reasonable mind might accept as adequate to support the conclusion reached. Id. 15-16.

In his Reply Brief, Plaintiff argues the regulations require the evaluation of medical opinions to be distinct from the evaluation of a claimant's allegations of limiting symptoms. (Reply 5). He argues a general summary of the evidence is not a sufficient explanation or analysis and concludes his argument, "A Plaintiff is entitled to an explanation when the ALJ rejects his sworn testimony based on reference to specific evidence that the ALJ believed to be contradictory, not an amorphous, vague, perfunctory rejection." Id.

### A.      Standard for Evaluating A Claimant's Allegations of Symptoms

The Tenth Circuit has explained the analysis for considering subjective allegations regarding symptoms.  Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.  This court has stated:  The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987).  We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Thompson, 987 F.2d at 1488(citations and quotation omitted).

In evaluating a claimant's allegations of symptoms, the court has recognized a non-exhaustive list of factors which should be considered.  Luna, 834 F.2d at 165-66; see also 20 C.F.R. § 404.1529(c)(3).  These factors include:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489).[3]

---

[3] Luna, Thompson, and Kepler, were decided when the term used to describe the evaluation of a claimant's allegations of symptoms resulting from his impairments was "credibility determination."  Although that term is no longer used, the applicable

The Commissioner has promulgated regulations suggesting relevant factors to be considered in evaluating a claimant's allegations of symptoms which overlap and expand upon the factors stated by the court:  Daily activities; location, duration, frequency, and intensity of symptoms; factors precipitating and aggravating symptoms; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms.  20 C.F.R. § 404.1529(c)(3)(i-vii).

### B.    The ALJ's Findings Regarding Plaintiff's Allegations

In his step three evaluation of Plaintiff's limitations in the four broad areas of mental functioning, the ALJ found only mild limitations in the areas of understanding, remembering, or applying information; and adapting or managing oneself, and in both instances noted Plaintiff's "activity levels (discussed below in terms of trips, and other interactions), and his mental status examinations (Exhibit 34F), so [sic] not support significant limitations in this area."  (R. 21).  The ALJ found moderate limitations in the

---

regulation never used that term and the procedure for evaluating a claimant's allegations of symptoms has not significantly changed.  Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,871 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1529).  Moreover, the Tenth Circuit held its approach to credibility determination was consistent with the approach set forth in Soc. Sec. Ruling (SSR) 16-3p. Brownrigg v. Berryhill, 688 Fed. App'x. 542, 546 (10th Cir. 2017).  Therefore, the three-step framework set out in Luna, based on 20 C.F.R. § 404.1529 (2017) is still the proper standard to be used as explained in the regulations in effect on December 15, 2022, when this case was decided.  Nonetheless, to the extent, and only to the extent, that "subjective measures of credibility that are peculiarly within the judgment of the ALJ;" Kepler, 68 F.3d at 391; relate to an examination of a claimant's character, it is specifically prohibited by SSR 16-3p, and is no longer a valid factor to be considered.

other two broad areas of mental functioning.  (R. 21).  In the area of interacting with

others the ALJ found Plaintiff's impairments present some challenges but his activities

such as flying on an airplane, going on cruises, etc. better support finding a moderate

rather than a marked limitation.  He concluded that Plaintiff's challenge in this area "also

informs the social limits in the residual functional capacity below, out of an abundance of

caution and with his history, current activities notwithstanding."  Id.  He found in the area

of concentrating, persisting, or maintaining pace, Plaintiff

> has a moderate limitation.  Given a whole person look at his pain, as well as
> his mental health issues, a moderate level of limitation is supported.  In this
> case, given his ability to go places like casinos, as noted below, or engage
> in other activities, a marked limitation would not be supported.  However,
> he is limited to semiskilled work below to best position him for success.
> This informs those [RFC] limits below, in terms of his pain, treatment for
> pain, and his mental health impairments cumulatively.  This is reflected in
> those limits below.

Id.

> The ALJ explained the rationale for the RFC limitations he assessed:
>
> The claimant is limited to a light exertional level, with occasional posturals
> and a need to shift positions every half hour, as well as some environmental
> limitations due to his back issues from degenerative disc disease, and his
> history of venous insufficiency.  The undersigned, at this step, is evaluating
> the impact his severe impairments have on his functioning.  While the
> evidence reasonably supports a limitation to light work, his activity levels
> show that he still functions enough to take trips, including a trip to Europe,
> a cruise, a comic book convention, a fair, a casino, a zoo, and other
> gatherings, albeit somewhat limited due to his PTSD and depression.
> (Exhibit 27F at 29-34; 34F)  Regarding his mental health issues, the
> claimant has been reluctant to go to malls and arcades due to witnessing a
> shooting there, but still enjoys video games, and spends much of his time
> playing them.  (Exhibit 34F)  Given the evidence, the claimant is limited to
> semiskilled work, with social limitations, and away from loud noises (to
> avoid PTSD triggers). These limits are reasonably supported by the
> evidence.

(R. 22-23).

The ALJ found Plaintiff's allegations of symptoms preventing him from working "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. 23. He then provided eleven reasons for discounting Plaintiff's allegations of limiting symptoms. He found Plaintiff's allegations of panic attacks, depression, hallucinations, and problems focusing (1) have not prevented him from taking trips to Europe, on a cruise, to a comic book convention, or to a fair, a casino, or a zoo, and (2) treatment notes don't indicate "that he attends to internal stimuli or that his hallucinations somehow prevent him from functioning." Id. He noted that Plaintiff is limited to light exertion but (3) "there is little evidence to support further limitations." Id.

Regarding Plaintiff's allegations of disabling back pain, the ALJ found (4) no evidence of radiculopathy, (5) Plaintiff's gait consistently within normal limits, and (6) "an unremarkable lumbar spine x-ray in September 2021. (Exhibit 26F at 94)." Id. He found, "The undersigned also notes the plethora of trips and other activities noted above during this period, which shows the claimant was not limited from going to another country, flying, or other activities that would require exertion, standing, and walking." Id. He concluded this analysis, "The claimant continues in pain management but [(7)] has no significant treatment notes for back pain in his most recent evidence. Indeed, the claimant plans on going on a cruise in January with his girlfriend, among the plethora of activities noted above. (Exhibit 34F)." Id.

The ALJ also addressed rationale related specifically to Plaintiff's allegations of mental symptoms. The ALJ noted Plaintiff's allegations of a need to avoid people and activities are (8) inconsistent with current treatment notes showing "the fact he takes trips to foreign countries, cruises, goes to casinos, zoos, comic book conventions (and an after party), as well as other things cited to in the record above." (R. 24). He found Plaintiff's allegations of an agitated mood and issues with socializing are (9) inconsistent with the facts Plaintiff "was going on a ghost hunt that weekend, and stated later that he has no problem going to casinos and bars. (Exhibit 28F at 10; 29F at 77) He indicated he could join [a] friend at a local comedy club, and to fly on a plane. (Exhibit 28F at 22, 33, 60)." Id. He found the fact Plaintiff enjoys going to the theater seems to indicate (10) noise levels are not debilitating and (11) Plaintiff's "mental status examinations are generally within normal limits and while he endorses psychotic symptoms, there is little objective evidence to support such findings." Id.

### C.    Analysis

Contrary to Plaintiff's argument, the ALJ did not suggest that Plaintiff's activities indicate an ability to engage in full-time work activities. Rather, as quoted and cited above, he found Plaintiff's activities are in conflict with several of the limitations allegedly resulting from his symptoms. Although Plaintiff argues extensively that his activities do not prove an ability to work and that his impairments affected the way he performed the activities and the frequency of those activities, the ALJ recognized the limitations alleged in performing the activities and Plaintiff does not argue he did not perform the activities relied upon. The record evidence supports the ALJ's findings

10

regarding those activities, and those activities conflict with the limitations alleged by

Plaintiff.  Other than his general argument the activities relied upon do not prove an

ability to work fulltime, Plaintiff does not address any of the individual inconsistencies

relied upon by the ALJ.  Rather, he next argues the ALJ erroneously relied merely upon

boilerplate language that Plaintiff's allegations are "not entirely consistent" with the

record evidence.  (Pl Br. 21) (quoting R. 23).  To be sure, the ALJ used boilerplate

language when he found, "the claimant's statements concerning the intensity, persistence

and limiting effects of these symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision."  (R.

23).  However, as stated by the ALJ and as noted above, the ALJ explained the

inconsistencies between Plaintiff's allegations and the record evidence.  The evidence

supports the ALJ's evaluation, and it is such relevant evidence as a reasonable mind

might accept as adequate to support the conclusion reached—that Plaintiff's allegations

of limiting symptoms should be discounted.

Finally, Plaintiff claims his strong work history should entitle him to an enhanced

credibility as has been allegedly provided by case law in the Second, Third, Fourth, Sixth,

Seventh, and Eighth Circuits.  The court has not even considered whether the cases cited

by Plaintiff demonstrate that those Circuits apply the law as suggested because it is

clearly not the law in the Tenth Circuit.  As the Commissioner points out in his brief, a

formalistic factor-by-factor consideration of the evidence is not required in evaluating a

claimant's allegations of symptoms, an ALJ need only set forth the specific evidence he

relies on in his evaluation.  (Comm'r Br. 15) (citing Qualls v. Apfel, 206 F.3d 1368, 1372

(10th Cir. 2000).  Moreover, to the extent a strong work history would entitle a claimant

to enhanced credibility appears to rely on "an examination of an individual's character,"

the SSA has specifically rejected such an examination.  SSR 16-3p, 2017 WL 5180304,

*2 (SSA Oct. 25, 2017).  All the cases cited in Plaintiff's Brief were decided before the

applicable date of SSR 16-3p wherein the Commissioner made it clear evaluation of a

claimant's allegations of limiting symptoms is not an examination of a claimant's

character but a consideration of the consistency of the claimant's allegations with all the

relevant record evidence.

> Adjudicators must limit their evaluation to the individual's statements
> about his or her symptoms and the evidence in the record that is relevant to
> the individual's impairments.  In evaluating an individual's symptoms, our
> adjudicators will not assess an individual's overall character or truthfulness
> in the manner typically used during an adversarial court litigation.  The
> focus of the evaluation of an individual's symptoms should not be to
> determine whether he or she is a truthful person.  Rather, our adjudicators
> will focus on whether the evidence establishes a medically determinable
> impairment that could reasonably be expected to produce the individual's
> symptoms and given the adjudicator's evaluation of the individual's
> symptoms, whether the intensity and persistence of the symptoms limit the
> individual's ability to perform work-related activities.

Id., at *11.

Plaintiff has shown no error in the ALJ's evaluation of Plaintiff's allegations of

limiting symptoms.

**III.    Evaluation of Medical Opinions**

Plaintiff claims the ALJ erred in discounting the persuasiveness of the medical

opinion of his treating psychologist, Dr. Debra Hurley, and finding the opinion of the

state agency psychiatrist, Dr. Mark Dilger, generally persuasive.  He argues that contrary

to the ALJ's finding otherwise, Dr. Hurley's opinions are well supported and consistent with record evidence that was not addressed by the ALJ.  (Pl. Brief 13) ("the treating psychologist explained her opinions were based on evidence of depressed mood, persistent or generalized anxiety, irritable affect, hostility or irritability, difficulty thinking or concentrating, poor immediate and recent memory, intrusive recollections of a traumatic experience, paranoia/suspiciousness, vigilance and scanning, anhedonia/pervasive loss of interests, decreased energy, pathological dependence, passivity or aggressiveness, social withdrawal or isolation, auditory hallucinations, and insomnia.") (citing R. 626, 629, 630-631, 2080, 2083).  Plaintiff claims the ALJ failed to discuss how he treated Dr. Hurley's explanation of these factors supporting her opinions. Id.  Plaintiff includes long string citations of where Dr. Hurley's treatment notes include statements (mostly by Plaintiff's report) regarding Plaintiff's having depression, anxiety, irritability, difficulty concentrating, a history of trauma, paranoia, vigilance, decreased energy/motivation, hallucinations, and disturbed sleep, id. at 14-15, and argues, "Paranoia, hallucinations, nightmares, anxiety and depression are certainly not 'normal' findings as characterized by the ALJ." Id. 15.

Plaintiff also claims it was error to discount Dr. Hurley's opinions because she opined different limitations.  Id.  He argues the differences between the opinions are de minimis, "supported by detailed explanations and consistent with the contemporaneous treatment records."  Id.  He argues the ALJ could have resolved any differences by meeting his duty to develop the record and contacting Dr. Hurley or asking Plaintiff's counsel for assistance.  Id.

Plaintiff claims it was error to discount Dr. Hurley's opinion based upon Plaintiff's activities because the ALJ did not account for the qualifying information Plaintiff provided to show the limitations on his activities.  (Pl. Br. 16).  He argues, "There is no evidence that [Plaintiff] engages in any regular activities that contradict the relevant medical opinions regarding Plaintiff's conditions on what he could do in a competitive work environment.  Certainly, his activities are not consistent with the ability to work a full-time job, 8 hours a day, 40 hours a week." Id. 17.

Plaintiff claims error in the ALJ's reliance on Plaintiff's improvement with treatment because of Plaintiff's "mental impairments that are known to wax and wane over time. Indeed, Plaintiff has had periods of modest improvement, and sometimes no improvement, inevitably followed by an exacerbation of his symptoms." Id. 18.  He also claims error in discounting Dr. Hurley's opinion while finding Dr. Dilger's opinion generally persuasive because of "the long-standing rule in the Circuit that opinions from these types of sources [(consultants)], standing alone, are not substantial evidence." Id. (citing Talbot v. Heckler, 814 F.2d 1456, 1463 (10th Cir. 1987) (citing therein Broadbent v. Harris, 698 F.2d 407, 412 (10th Cir. 1983)) ("opinions of physicians 'who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim'" (quoting Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980)).  Plaintiff further argues, "The American Psychiatric Association has repeatedly held, affirming the position as recently as March 16, 2017, that it is 'unethical to offer a professional opinion about an individual without conducting

14

an examination.'"  (Pl. Br. 18) (citing https://www.psychiatry.org/news-room/apa-blogs/apa-blog/2017/03/apa-remains-committed-to-supporting-goldwater-rule, last visited March 21, 2024).

Finally, Plaintiff argues the ALJ did not sufficiently articulate how he considered the consistency and supportability factors regarding Dr. Hurley's opinions.  Id. at 19.  He argues, "As discussed above, the ALJ failed to articulate how he considered evidence that is highly relevant to the factors of supportability and consistency.  The ALJ also focused on evidence that fails to contradict those opinions as detailed above."  Id.  He concludes by arguing the ALJ did not adequately consider the relationship and specialization factors regarding Dr. Hurley's opinions.  Id.

The Commissioner responds that the ALJ applied the correct legal standard when evaluating Dr. Hurley's medical opinions and the prior administrative medical finding of Dr. Dilger and the record evidence supports his findings.  The Commissioner argues the ALJ discussed Dr. Hurley's explanation and noted it conflicted with Plaintiff's extensive activities.  (Comm'r Br. 8).  He argues, contrary to Plaintiff's allegations, the ALJ specifically noted Plaintiff expressed limitations regarding performance of his various activities.  Id.  The Commissioner argues Dr. Hurley provided two opinions which offered different limitations for Plaintiff for the same time period and suggested Plaintiff had disabling symptom during a period in which he was actually working, thereby justifying discounting the opinions' persuasiveness.  Id. 9.

The Commissioner argues the ALJ's finding Dr. Hurley's opinions not supported by her own clinical observations and inconsistent with the normal mental status

examinations from other providers is supported by the record evidence.  (Comm'r Br. 9-10).  He argues Plaintiff's appeal to other record evidence suggesting otherwise does not compel a contrary finding and, thus, merely asks the court to reweigh the evidence.  Id. 11 (citing Alarid v. Colvin, 590 F. App'x 789, 798 (10th Cir. 2014)).

The Commissioner argues the opinions of state agency consultants expressed in prior administrative medical findings can properly constitute substantial evidence in accordance with the regulations.  Id.  He argues the case relied upon by Plaintiff to argue otherwise, and the cases cited therein, do not hold that prior administrative medical findings can never constitute substantial evidence and the premise upon which they do rely is based upon the outdated and abrogated treating physician rule under prior regulations.  Id. 11-12 (citing Talbot, 814. F.2d at 1463).

The Commissioner also contends it is not unethical for state agency psychological consultants to render a psychological opinion without an examination in these circumstances and it is not a violation of the so-called Goldwater Rule.  Id. 12-13.  He argues, "the American Psychiatric Association itself has since clarified this Rule stating that the second sentence is meant to be read only in conjunction with the first sentence referencing public figures and does not limit experts in criminal trials or government agencies from rendering their opinions based only on records."  Id. 12 (citing Interpreting the Goldwater Rule | Journal of the American Academy of Psychiatry and the Law (jaapl.org), https://jaapl.org/content/45/2/233), last visited March 21, 2024.  The Commissioner argues the ALJ applied the correct legal standard and his findings are supported by substantial evidence.

16

In his Reply Brief Plaintiff argues, without citation to authority, that "mental status examination findings are always going to show at least some normal findings unless the claimant is floridly psychotic[,] and a patient's good rapport with a treating provider has little relevance to his functioning in a competitive work environment." (Reply 2). He argues the significance of psychological findings is "beyond the expertise of a layman ALJ" and allowing an ALJ "to substitute his or her judgment for trained clinicians based on what the layman ALJ deems normal is both terrible medicine and awful law. An ALJ's hunch of what is crucial cannot be the basis for the rejection of reports from a treating mental health specialist." Id. (all without citation to authority). He goes on to quote the Seventh Circuit that an ALJ should not play doctor because "[c]ommon sense can mislead; lay intuitions about medical phenomena are often wrong." Id. at 3 (quoting Schmidt v. Sullivan, 914 F.2d 117, 118 (7th Cir. 1990); and citing Kemp v. Bowen, 816 F.2d 1469, 1476 (10th Cir. 1987) ("While the ALJ is authorized to make a final decision concerning disability, he cannot interpose his own 'medical expertise' over that of a physician.").

Plaintiff notes the Tenth Circuit has

long recognized that an individual's mental status can wax and wane depending on the psychiatric disorder, the effects of medication at one dosage versus another, or even the combination of various medications combined with other treatments or even other concomitant conditions, which explains why clinical findings may change from one visit to another.

Id. (citing, among other Circuits' cases, Washington v. Shalala, 37 F.3d 1437, 1442-43 (10th Cir. 1994)). He argues "[t]he ALJ did not consider the longitudinal medical record here," and implies the ALJ ignored significantly probative evidence supporting a finding

of disability.  (Reply 3) (citing <u>Briggs v. Massanari</u>, 248 F.3d 1235, 1239 (10th Cir.

2001).  Finally, Plaintiff acknowledges that the SSA abrogated the treating physician rule

with new regulations promulgated in 2017, but argues the new regulations did not affect

<u>Talbot's</u> holding that "opinions from non-examining sources standing alone are not

substantial evidence."  <u>Id.</u> 4.

### A.    Standard for Evaluating Medical Opinions

Effective March 27, 2017, the Commissioner propounded new regulations

controlling the manner in which he would consider evidence.  <u>See, e.g.</u> 20 C.F.R.

§§ 404.1520b, 404.1520c (2017).  In the new regulations, the Commissioner found that

certain evidence (including decisions by other governmental agencies and

nongovernmental entities, disability examiner findings, and statements on issues reserved

to the Commissioner) "is inherently neither valuable nor persuasive to the issue of

whether you are disabled or blind under the Act, [and the SSA] will not provide any

analysis about how we considered such evidence in our determination or decision."  20

C.F.R. § 404.1520b(c) (2017).

In the new regulations, the Commissioner explicitly delineated five categories of

evidence including objective medical evidence, medical opinion, other medical evidence,

evidence from nonmedical sources, and prior administrative medical findings.[4]  20 C.F.R.

---

[4] "Prior administrative medical findings" is a term of art referring to the findings of state
or federal agency physicians or psychologists about a medical issue at an earlier level of
review.  20 C.F.R. § 404.1513(a)(5).  Although broader in scope than a "medical
opinion," <u>id.</u> at § 404.1513(a)(2), the terms are often used interchangeably and the court
will follow that practice in this case except when necessary to draw a distinction.

§ 404.1513 (2017).  The regulations define objective medical evidence as "medical signs, laboratory findings, or both."  20 C.F.R. § 404.1513(a)(1) (2017).  "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis."  20 C.F.R. § 404.1513(a)(3) (2017).  "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim."  20 C.F.R. § 404.1513(a)(4) (2017).

That regulation defines "medical opinion" and "prior administrative medical finding:"

> (2) Medical opinion.  A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …

>> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);

>> (ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;

>> (iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and

>> (iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.

> ***

(5) Prior administrative medical finding.  A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:

(i) The existence and severity of your impairment(s);

(ii) The existence and severity of your symptoms;

(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;

(iv) Your residual functional capacity;

(v) Whether your impairment(s) meets the duration requirement; and

(vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. § 404.1513(a)(2, 5) (2017).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017."  20 C.F.R. § 404.1520c (2017).  That regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a) (2017).  The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative

20

medical finding.  20 C.F.R. § 404.1520c(a)(c)(1-5) (2017).  It provides that the most

important factors in evaluating persuasiveness are supportability and consistency.  Id.

The regulation explains that the decision will articulate how persuasive the SSA

finds all medical opinions and prior administrative medical findings.  20 C.F.R.

§ 404.1520c(b) (2017).  The articulation requirement applies for each source, but not for

each opinion of that source separately.  20 C.F.R. § 404.1520c(b)(1) (2017).  It requires

that the SSA "will explain how we considered the supportability and consistency factors

for a medical source's medical opinions or prior administrative medical findings in your

determination or decision."  20 C.F.R. § 404.1520c(b)(2) (2017).

### B.      The ALJ's Evaluation of the Relevant Medical Opinions

The ALJ explained his evaluation of Dr. Hurley's and Dr. Dilger's opinions:

There are two mental health opinions from Dr. Debra Hurley, PhD.  The
first, in Exhibit 11F notes the claimant has anger issues, noted his pain
exacerbated his issues and that he was markedly limited in several areas.
She attached a narrative noted [sic] he suffered from PTSD, noting his
anger and frustration that impacted his ability to work.  It does not,
apparently, impact his ability to go on cruises, fly in airplanes, go to
casinos, and take trips to Europe, among other activities.  She projected her
limitations back to January 2021.

Dr. Hurley also submitted an opinion dated August 2022, which is even
more limiting, with more marked limitations, noting he would be absent
more than 3 times per month, and in this opinion, she stated her projections
related back to 2008, which seems to problematize her earlier opinion,
which is not as limiting, but addresses part of the same time period.  This
undermines the supportability of her opinions as they are inconsistent.  In
both cases, his activity level undermines the supportability of these
opinions, and her treatment notes in Exhibit 29F, 32F and 34F do not
demonstrate the level of limitation given in these opinions, showing mental
status examinations within normal limits.  The claimant has shown obvious
improvement due to his activity level, and the things he is capable of would
not be supported were Dr. Hurley's opinions accurate.  In this case, even as

an "examining" physician, the lack of consistency between the claimant's actual functionality, treatment notes and her opinion regarding the claimant's abilities undermine the persuasiveness of her claims. This is not a well-supported or consistent opinion when viewed in the light of the contrary evidence and these opinions (the parts that do not contradict certainly), are a poor basis for decisionmaking. The undersigned does note that the claimant would be limited, and part of this opinion is well enough supported to be reflected above, but that is not an endorsement of the opinion generally.

The opinion of Dr. Mark Dilger, M.D. is found to be generally persuasive. (Exhibit 4A). This opinion limited the claimant to 3-4 step instructions, noted by the undersigned as consistent with semiskilled work, and due to his PTSD, limits him to a more socially isolated workplace, in fact probably more isolating than his activity level would allow, out of an abundance of caution. This opinion is well supported in terms of noting the claimant's activity levels, and the lack of debilitating symptoms in the record. It is consistent with the evidence noted and is more reflective of Dr. Hurley's treatment notes than her opinion, especially Exhibit 33F. The claimant generally has mental status examinations within normal limits and while he does have impairments that would do best addressed with limitations above, he is capable work activity [sic] within a more simplified and socially isolated workplace. This addresses his and Dr. Hurley's discussion of his social capability and is certainly more limiting than his actual activities like his upcoming cruise.

(R. 24-25).

C.      **Analysis**

The court's consideration must begin with the Commissioner's final decision, in this case the decision of the ALJ. The question for the court is whether that decision reveals the correct legal standard was followed and whether substantial evidence (such relevant evidence as a reasonable mind might accept as adequate to support a conclusion) supports the decision's findings. It is irrelevant how the court would have decided the issues and the court may not decide whether the evidence would support a different decision. "The possibility of drawing two inconsistent conclusions from the evidence

does not prevent an administrative agency's findings from being supported by substantial evidence. [The court] may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo." Lax, 489 F.3d at 1084 (citations, quotations, and bracket omitted); see also, Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). If the ALJ applied the correct legal standard, and if the evidence supports the findings of the ALJ and does not compel a contrary finding, the court's job is done and it must affirm the Commissioner's decision. That is the case here.

The ALJ found Plaintiff's RFC included mental limitations to

> understand, remember, and execute detailed but not complex instructions consistent with semiskilled work, and can maintain concentration, persistence, and pace in so doing. The claimant may work in locations devoid of dense crowds (e.g. fairs, festivals, busy retail locations). The claimant may occasionally interact with supervisors but cannot tolerate close "over-the-shoulder" supervision. The claimant may occasionally interact with colleagues if meetings are brief and task oriented but may not interact with the public. The claimant may work in locations in which sudden loud noises are not common (examples of inappropriate places include blasting zones, gun ranges).

(R. 22) (bold omitted). He noted that the RFC assessed included mental limitations and he accepted part of Dr. Hurley's opinions as they are "well enough supported to be reflected above, but that is not an endorsement of the opinion generally." Id. 25.

He explained his reasons for discounting Dr. Hurley's opinion. (R. 24-25). He found that although Dr. Hurley opined Plaintiff's mental impairments impacted his ability to work they did "not, apparently, impact his ability to go on cruises, fly in airplanes, go to casinos, and take trips to Europe, among other activities." Id. 24. He noted that Dr.

Hurley's second opinion was more limiting than the first opinion but was applied to a time thirteen years before the first opinion thereby producing an inconsistency detracting from accepting either opinion.  Id. 25.  He found Plaintiff's activity levels are greater than the limitations opined in either opinion, and Dr. Hurley's treatment notes do not demonstrate the limitations opined.  Id.  He concluded, "the lack of consistency between the claimant's actual functionality, treatment notes and [Dr. Hurley's] opinion regarding the claimant's abilities undermine the persuasiveness of her claims."  Id.

Plaintiff argues the ALJ did not address record "evidence of [Plaintiff's] depressed mood, persistent or generalized anxiety, irritable affect, hostility or irritability, difficulty thinking or concentrating, poor immediate and recent memory, intrusive recollections of a traumatic experience, paranoia/suspiciousness, vigilance and scanning, anhedonia/pervasive loss of interests, decreased energy, pathological dependence, passivity or aggressiveness, social withdrawal or isolation, auditory hallucinations, and insomnia" as presented by Dr. Hurley in stating her opinions.  That argument fails because the ALJ specifically discussed both of Dr. Hurley's opinions to which Plaintiff cites in his argument.  (R. 24-25).  Moreover, the evidence to which Plaintiff appeals is symptoms and psychiatric signs, and as Plaintiff points out, the ALJ is a layman not qualified to render a psychiatric opinion based upon such symptoms and signs.  However, to the extent the evidence respecting paranoia, hallucinations, nightmares, anxiety and depression is symptoms, or based on Plaintiff's report of symptoms, the ALJ discounted Plaintiff's allegations of symptoms and, as found hereinabove, the record evidence supports the ALJ's findings.  Further, the ALJ found that "there is little indication in the

treatment notes that [Plaintiff] attends to internal stimuli or that his hallucinations somehow prevent him from functioning (R. 23); that "while [Plaintiff] endorses psychotic symptoms [(such as hallucinations)], there is little objective evidence to support such findings; id., 24; and that Dr. Hurley's "treatment notes in Exhibit 29F, 32F and 34F do not demonstrate the level of limitation given in [Dr. Hurley's] opinions, showing mental status examinations within normal limits." Id. 25. While Plaintiff argues Dr. Hurley's opinions should be given greater weight, he does not point to record evidence, other than his own reports, demonstrating a response to internal stimuli, that he has noticeable psychotic symptoms, or that there is evidence in Dr. Hurley's treatment notes which demonstrate the level of limitations she opined. Rather, his argument seems to be, Dr. Hurley is a psychologist, she treated me for several years, she opined I have these limitations, the ALJ is not qualified to provide an opinion regarding my limitations, therefore, he must accept the limitations opined by Dr. Hurley. Plaintiff's argument ignores that there is another medical opinion in the record respecting Plaintiff's mental abilities from Dr. Dilger, that it is the ALJ's duty to determine Plaintiff's RFC, and that determination is to be made based on all the record evidence not just the medical evidence and not just the medical opinion evidence.

Even if the difference between Dr. Hurley's opinions were de minimis. The opinions provide different limitations over the same time, suggesting that Dr. Hurley was not correctly considering Plaintiff's abilities in at least one of her opinions, and she provides no explanation for the shortcoming or for the difference. Moreover, she opines that Plaintiff had disabling limitations during periods when he was, in fact, working at

substantial gainful activity.  (R. 249-50).  Plaintiff's suggestion, that because of his duty to develop the record the ALJ should have asked Dr. Hurley or Plaintiff's counsel to correct or explain the differences in the two opinions, misunderstands the ALJ's duty. The Social Security Act places a duty on the ALJ to fully and fairly develop the record as to material issues; <u>Baca v. Dep't of Health & Human Serv.</u>, 5 F.3d 476, 479-80 (10th Cir. 1993).  When medical evidence is inadequate to make a disability decision, the Commissioner must seek additional evidence or clarification from the medical sources or procure consultative examinations.  20 C.F.R. §§ 404.1512(b), 404.1519a(b).  The duty to clarify or seek additional evidence arises, however, only if the evidence available to the ALJ is inadequate to make a decision.  <u>White</u>, 287 F.3d at 908.  The duty is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts.  <u>Henrie v. U.S. Dep't of Health & Human Servs.</u>, 13 F.3d 359, 360-61 (10th Cir. 1993).  The ALJ also has a duty to provide a narrative discussion in his RFC assessment which must include an explanation how any ambiguities and material inconsistencies in the evidence were considered and resolved and to explain why he did not adopt a medical source opinion which conflicts with the RFC assessed.  SSR 96-8p, 1996 WL 374184, *7 (SSA July 2, 1996).  That is precisely what the ALJ did here.  More is not required.

Plaintiff's claim of error in discounting Dr. Hurley's opinions based on Plaintiff's activities also fails.  The ALJ recognized that Plaintiff has limitations in his mental abilities.  (R. 25).  The ALJ also recognized Plaintiff reported limitations when performing these activities.  <u>Id.</u> 22 ("he still functions enough to take trips, including a

trip to Europe, a cruise, a comic book convention, a fair, a casino, a zoo, and other gatherings, albeit somewhat limited due to his PTSD and depression.") (emphasis added); 23 ("the claimant plans on going on a cruise in January with his girlfriend, among the plethora of activities noted above.  (Exhibit 34F).  Thus, he was not as limited as he alleged at hearing and is not prevented from doing these things by his pain.") (emphasis added).  The ALJ summarized his consideration of Plaintiff's mental limitations:

> The claimant has consistently reported an agitated mood and has some issues with socializing with others (Exhibit 29F at 59), but also noted he was going on a ghost hunt that weekend, and stated later that he has no problem going to casinos and bars.  (Exhibit 28F at 10; 29F at 77).  He indicated he could join friend [sic] at a local comedy club, and to fly on a plane.  (Exhibit 28F at 22, 33, 60).  So while the claimant does have a history of PTSD and depression and has been in steady treatment, the undersigned notes that there is little limitation from these on the claimant's functioning.  While he does live at home, he also seems to have little problem with socializing overall.  He did describe some problems with loud noises due to his service.  (Exhibit 27F at 65).  He also enjoys going to the theater, which would seem to indicate noise levels are not totally debilitating. (Exhibit 27F at 50).

Id. 24 (emphases added).  The problem is that although Plaintiff reported limitations affecting his activities, the ability to perform these activities, even with the alleged limitations, raises insurmountable questions with accepting Dr. Hurley's opinions of at least moderate limitations in all the mental abilities identified in her opinions and marked limitations in about half of the abilities.  (R. 628, 2082).

Plaintiff claims the ALJ erred in relying on improvement with treatment because Plaintiff's mental impairments are known to wax and wane and "Plaintiff has had periods of modest improvement, and sometimes no improvement, inevitably followed by an exacerbation of his symptoms."  (Pl. Br. 18).  While the records reveal that at times

Plaintiff reports an improvement in symptoms and at times a worsening of symptoms, Plaintiff's Brief does not cite, and the court did not find record evidence which would compel accepting Dr. Hurley's opinions or finding greater limitations than those assessed by the ALJ.

Moreover, Plaintiff's appeal to Talbot for the principle that the opinions of non-examining physicians such as Dr. Dilger, standing alone, are not substantial evidence is unavailing. As the Commissioner suggests, Talbot deals with weighing medical opinions in accordance with the treating physician rule. 814 F.2d at 1463. And that is no longer the standard applied to evaluating medical opinions. Nonetheless, the Tenth Circuit has held that reports from state agency consultant psychologists and physicians consisting solely of boxes checked on SSA "forms standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence." Frey v. Bowen, 816 F.2d 508, 515 (10th Cir. 1987). However, Dr. Dilger's form is accompanied by extensive narrative explanation of his consideration of the Commissioner's Psychiatric Review Technique and of the Mental Residual Functional Capacity he assessed. (R. 80-81, 87-88). Based upon his discussion and explanation, Dr. Dilger's report is the type of relevant evidence which, along with the other evidence relied upon by the ALJ, a reasonable mind might accept as adequate to support a conclusion.

Moreover, the American Psychiatric Association simply does not now hold, and never has held, that it is unethical for a psychiatrist to render an advisory opinion without an examination in a consultative role such as in a disability evaluation for the SSA. That fact is revealed in a link in the very article cited by Plaintiff to assert Dr. Dilger was

28

acting unethically to provide his prior administrative medical finding in this case.  When
one follows the link provided in Plaintiff's Brief to the article titled APA Remains
Committed to Supporting Goldwater Rule, APA President Blog (APA March 16, 2017),
available at, Psychiatry.org - APA Remains Committed to Supporting Goldwater Rule
(last visited March 21, 2024), one will find a hyper link in the first line entitled "Ethics
Committee issued an opinion" which will take one to the ethics committee opinion
affirming the APA's support for the Goldwater Rule.  American Psychiatric Association
Ethics Committee Opinion dated March 15, 2017, available at, APA-Ethics-Committee-
Goldwater-Opinion.pdf (psychiatry.org) (last visited March 21, 2024).  Pages two and
three of the opinion address five main arguments against the opinion's position—"that it
is unethical for a psychiatrist to offer a professional opinion about an individual based on
publicly available information without conducting an examination."  Id. p.1.  The
discussion in the second argument explains why the Goldwater Rule does not apply to a
psychiatrist rendering an opinion without an examination in the context of a Social
Security disability adjudication:

> Psychiatrists have also argued that the "Goldwater Rule" is not sound
> because psychiatrists are sometimes asked to render opinions without
> conducting an examination of an individual.  Examples occur, in particular,
> in certain forensic cases and consultative roles.  This objection attempts to
> subsume the rule with its exceptions.  What this objection misses, however,
> is that the rendering of expertise and/or an opinion in these contexts is
> permissible because there is a court authorization for the examination (or an
> opinion without examination), and this work is conducted within an
> evaluative framework including parameters for how and where the
> information may be used or disseminated.  In addition, any evaluation
> conducted or opinion rendered based on methodology that departs from the
> established practice of an in-person evaluation must clearly identify the

methods used and the limitations of those methods, such as the absence of
an in-person examination.

Id. p.2 at b (emphases added by the court).  Dr. Dilger's opinion was rendered in a

consultative role and the Social Security regulations and procedural, appeal, and legal

manuals clearly identify the methods used including the absence of an in-person

examination.

Plaintiff's argument that the ALJ insufficiently articulated his consideration of the

consistency and supportability factors and did not adequately consider the relationship

and specialization factors likewise fails.  As noted above, the ALJ is required to consider

all five regulatory factors and is required to articulate his consideration of the consistency

and supportability factors.  20 C.F.R. § 404.1520c.  As quoted above, the ALJ discussed

his consideration of Dr. Hurley's medical opinions.  Supra, 21-22.  In that discussion he

noted Dr. Hurley's opinions were inconsistent with several of Plaintiff's activities during

the relevant period thereby undermining their supportability, that the opinions were

inconsistent between each other, and that Dr. Hurley's treatment notes were inconsistent

with many limitations she opined, although her treatment notes demonstrated that some

of the limitations were supported and those had been incorporated into the RFC assessed.

(R. 24-25).  The ALJ's discussion also demonstrated he had considered that Dr. Hurley

was a psychologist (specialization; "Dr. Debra Hurley, Ph.D.." (R. 24) (underline

added)); and he had considered that she had treated Plaintiff (relationship; (noting her

treatment notes, Exs. 29F, 32F, 34F (R. 25)).  Thus, it is clear from the decision that the

ALJ considered the specialization and relationship factors and articulated his

consideration of the consistency and supportability factors as the regulations require.  If Plaintiff is to show error in the ALJ's decision, he may not now rely on the fact other evidence might support a different conclusion; Consolo, 383 U.S. at 620; but he must show that the evidence compels a different conclusion.  Elias-Zacarias, 502 U.S. at 481, n.1.  He has not done so.

Finally, the court addresses Plaintiff's argument suggesting the ALJ substituted his judgment for Dr. Hurley's and interposed "his own 'medical expertise' over that of a physician."  (Reply Br. 3) (quoting Kemp, 816 F.2d at 1476).  The final responsibility for assessing RFC rests with the Commissioner and has been delegated to the ALJ at the ALJ hearing level.  20 C.F.R. § 404.1546.  Although an ALJ is not an acceptable medical source qualified to render a medical opinion, "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."  Howard v. Barnhart, 379 F.3d 945, 949 (10th Cir. 2004).  "And the ALJ's RFC assessment is an administrative, rather than a medical determination."  McDonald v. Astrue, 492 F. App'x 875, 885 (10th Cir. 2012) (citing SSR 96-05p, 1996 WL 374183, at *5 (July 1996)).  Because RFC assessment is made based on "all of the evidence in the record, not only the medical evidence, [it is] well within the province of the ALJ."  Dixon v. Apfel, No. 98-5167, 1999 WL 651389, at **2 (10th Cir. Aug. 26, 1999); 20 C.F.R. § 404.1545.  Plaintiff is correct that an ALJ may not interpose his medical judgment over that of a physician or psychologist, but the ALJ did not do that here.  Rather, he considered all the record evidence, including among the other evidence Dr. Dilger's medical opinion, Dr. Hurley's medical opinions, and the treatment records.  He then determined that Dr. Hurley's

opinions were only partially persuasive and explained his reasons for doing so.  His

reasons are supported by the record evidence and Plaintiff points to no record evidence

that compels a different finding.

Moreover, the Tenth Circuit's opinion in <u>Kemp</u> does not require a different

finding.  In <u>Kemp</u>, the court found the ALJ's "finding that Mrs. Kemp is able to perform

sedentary work and to return to her former vocation is … without support in the record."

816 F.2d at 1475.  It also found, "In the case of Mrs. Kemp there was not even evidence

from a consulting physician retained by the agency to contradict the medical diagnosis,

findings, and conclusions of her treating physician, Dr. Brown."  <u>Id.</u> at 1476.

Consequently, the ALJ's RFC had no record support, and the case was remanded for an

immediate award of benefits.  <u>Id.</u> at 1477.

Plaintiff has shown no error in the Commissioner's decision below.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the

fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated March 25, 2024, at Kansas City, Kansas.


<u>s:/   John W. Lungstrum____</u>
**John W. Lungstrum**
**United States District Judge**